## S13A0129. BULLOCH v. THE STATE.
(744 SE2d 763)

BENHAM, Justice.

Charles Aldon Bulloch filed this appeal from his conviction for the murder of Paul McKeen, Jr.[1] Bulloch asserts reversible error with respect to the admission of certain hearsay testimony at trial and with respect to the instruction to the jury regarding venue. He also asserts the trial court erred in denying his motion for new trial on the ground of ineffective assistance of counsel.

This Court has previously reviewed and summarized the evidence presented at trial in the appeal filed by Bulloch's co-defendant

---

[1] McKeen died as a result of injuries he suffered on the evening of February 27 or the early morning of February 28, 1990. On September 14, 2004, a Harris County grand jury indicted Bulloch, Johnny Vernon Phillips, James Randall Reagan, and Guy Walter Hardaway for malice murder, felony murder in the commission of kidnapping, and two counts of kidnapping with bodily injury. The four were tried together with separate counsel before a jury on February 28-March 4, 2005. The two counts of kidnapping with bodily injury were dismissed as barred by the statute of limitation. Bulloch was found guilty on March 4, 2005 of malice murder and felony murder. That same day, Bulloch was sentenced to life in prison for malice murder, and the felony murder conviction was vacated as a matter of law. Bulloch filed a motion for new trial on March 18, 2005, which was denied on September 25, 2005. Bulloch filed a notice of appeal on October 28, 2005 but, upon the filing of a pro se motion seeking appointment of new counsel, this Court remanded the case for appointment of a new appellate counsel on February 28, 2006. Ultimately, Bulloch's current appellate counsel made an appearance and filed a second motion for new trial on May 2, 2011. After a hearing on this and other motions, Bulloch's motion for new trial was denied by order entered June 8, 2012. Appellant filed a renewed notice of appeal on July 6, 2012, and this appeal was docketed to the January 2013 term of this Court. The case was orally argued on January 8, 2013.

Johnny Vernon Phillips. See *Phillips v. State*, 280 Ga. 728 (632 SE2d 131) (2006). Viewed in the light most favorable to the verdict, the evidence shows Bulloch was an admitted drug dealer. McKeen owed Bulloch money for a cocaine purchase. A few days prior to McKeen's death, Bulloch got into a fist fight with McKeen and threatened to beat McKeen to death if he did not pay the money. On the evening of February 27, 1990, McKeen was with his wife in a bar called "The Pub." Phillips and Bulloch were also there with co-defendants Guy Walter Hardaway and James Randall Reagan.[2] McKeen and Bulloch played a game of pool, with the stakes being "double or nothing" on a debt, and Bulloch won the game. McKeen's wife left him in the company of Reagan and another man who was not charged with this crime. Later in the evening, Phillips and Bulloch took McKeen in a black Mustang convertible to a pull-off on the road on Pine Mountain in Harris County. Michael Railey followed them there in order to purchase drugs from Bulloch. When Railey approached the car that Bulloch was driving, McKeen asked him for a ride back to The Pub. Phillips, seated in the back seat with McKeen, refused to let him go and told Railey that McKeen was either going to pay the money he owed or get a beating.

The next morning, Bulloch went to the home of Robert Pearson, who regularly monitored police scanners. Bulloch asked Pearson if he had heard anything about "anything on top of the mountain." Bulloch also told Pearson he would be leaving town for a bit because he, Phillips, Hardaway, and Reagan had severely beaten "that McKeen boy" because of a debt. Bulloch also said McKeen "wouldn't ever owe me no more money." Pearson also testified Bulloch told him that "when [Phillips] got started that [Bulloch] couldn't stop him; that [Phillips] ended up hitting [McKeen] with a tire tool."

That same morning, McKeen was found unconscious and barely alive beside a remote road in Meriwether County. He died in a hospital several days later. Doctors determined the cause of death to be blunt-force trauma to the head that had caused severe brain damage. Sixteen days prior to the McKeen beating, Bulloch and Reagan had beaten another man with a pool stick and driven away from the scene in a black Mustang convertible.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty

---

[2] Reagan was acquitted of the murder charges but convicted of aggravated assault and kidnapping, which convictions were affirmed by the Court of Appeals. *Reagan v. State*, 281 Ga. App. 708 (637 SE2d 113) (2006).

beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Bulloch asserts he was denied effective assistance of trial counsel on several grounds: because trial counsel did not investigate the prosecution's case; did not investigate and interview any defense witnesses except for Bulloch's sister; did not present probative evidence of his alibi; did not offer critical evidence in support of the defense that Bulloch did not participate in McKeen's beating; did not present probative evidence that another named individual was the killer; did not effectively impeach any of the witnesses; was unsuccessful in his effort to exclude the admission of highly prejudicial hearsay testimony; failed to object to the jury instruction on venue; and made several other unspecified trial errors. After conducting an evidentiary hearing on Bulloch's motion for new trial on the ground of ineffective assistance of counsel and other grounds, the motion was denied in a comprehensive and detailed order finding that, even if in hindsight trial counsel may have made some mistakes, trial counsel's performance was "more than adequate" and concluding that his representation cannot be considered ineffective under the standard set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). This Court has reviewed the evidence presented in support of Bulloch's claim of ineffective assistance and the order denying his motion for new trial. Finding no error, we affirm the denial of the motion for new trial.

To prevail on a claim of ineffective assistance of counsel,

> appellant must show that [his] attorney's performance was deficient and that, but for such deficiency, there is a reasonable probability that the outcome of [his] trial would have been different. In applying this test, we accept the trial court's findings of fact and credibility determinations unless they are clearly erroneous, but we independently apply the proper legal principles to the facts.

*Waits v. State*, 282 Ga. 1, 5 (4) (644 SE2d 127) (2007) (citation omitted). Trial counsel's testimony established he was, at the time of the trial, an experienced criminal defense attorney with previous experience in murder trials. In preparation for trial, he interviewed only Bulloch and his sister. Trial counsel was aware, however, that attorneys for co-defendants had interviewed a number of other witnesses, and he did not deem it necessary to duplicate their efforts. He also reviewed discovery reports on what the State's witnesses had

stated to investigators. Trial counsel spent time preparing for cross-examination of witnesses, preparing jury charges, and other pre-trial tasks. Trial counsel acknowledged he did not interview Bulloch's then-girlfriend, who was the owner of the black Mustang convertible in which a witness testified Bulloch and the victim rode to Pine Mountain on the night of the murder, and he did not learn that the girlfriend was allegedly incarcerated and her car allegedly impounded as of the date of the murder. He acknowledged that had he known that fact, he would have used that information as part of his trial strategy. Nevertheless, the evidence established that trial counsel discussed the car with Bulloch and yet was not aware before trial that the car was allegedly impounded. In the *Strickland* opinion, the Supreme Court of the United States recognized that reasonable professional judgments may support limitations on trial counsel's investigations. 466 U. S. at 691. We find no error in the court's determination that trial counsel's trial preparation was not deficient.

Trial counsel acknowledged that he reviewed the State's interview of Debra Phillips, that he did not recall that the report showed she would have served as an alibi witness, that he did not recall why he did not call her as a witness, and that it was a mistake not to consider calling her as an alibi witness. Nevertheless, trial counsel did present alibi evidence at trial when Bulloch elected to testify. We find no error in the trial court's conclusion that, even if errors were made, trial counsel's performance was more than adequate. Even if mistakes were made, we conclude they were not "so serious as to deprive the defendant of a fair trial, a trial whose result[s are] reliable." Id. at 687.

With respect to Bulloch's assertion that trial counsel was ineffective as a result of his unsuccessful efforts to exclude hearsay testimony, the trial transcript shows that counsel raised objections to the admissibility of testimony of the victim's wife with respect to an out-of-court statement the victim made to her but raised no objection to the testimony of the victim's brother regarding an out-of-court statement made to him. This testimony is discussed in detail in Division 3, below, in which we conclude it was not error to admit the testimony of the wife over the objections of Bulloch's counsel and that Bulloch waived his right to assert error with respect to the brother's testimony because he failed to object to that testimony. We reject Bulloch's assertion that the victim's out-of-court statement to his brother is a "testimonial statement" as that term is used in *Crawford*

*v. Washington*, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004).[3] For the same reasons that we conclude, in Division 3, that the wife's testimony about the victim's out-of-court statements was admissible pursuant to the necessity exception of former OCGA § 24-3-1 (b),[4] we conclude the brother's testimony was also admissible. "There is no deficient performance when an attorney fails to object to admissible evidence." *Poole v. State*, 291 Ga. 848, 857 (8) (734 SE2d 1) (2012). Bulloch has not established ineffective assistance of counsel by showing trial counsel could have made other objections and presented additional evidence relating to those out-of-court statements.

Bulloch has not established ineffective assistance of counsel on the ground that trial counsel called Bulloch as the only defense witness. Under the version of OCGA § 17-8-71 in effect at the time of trial, a criminal defendant had the right to make the final closing argument to the jury if the defendant presented no evidence.[5] It was thus a reasonable trial strategy not to present evidence in order to preserve the right to close. In this case, this initial strategy was defeated when one of the co-defendants introduced documentary evidence. Nevertheless, Bulloch has failed to demonstrate that trial counsel failed to perform effectively once the trial strategy changed mid-trial. See *Rolland v. State*, 280 Ga. 517 (2) (a), (b) (630 SE2d 386) (2006).

We have considered Bulloch's additional arguments relating to the conduct of trial counsel and also find them insufficient to demonstrate ineffectiveness of trial counsel. We find no error in the trial court's finding that trial counsel's strategy and tactics were reasonable. With respect to Bulloch's assertion that this Court should consider the combined prejudicial effect of counsel's deficiencies, we "evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." *Waits v. State*, supra at 6 (citations and punctuation omitted). As previously noted, applying the *Strickland* standards, even if counsel were deficient in certain respects, "we

---

[3] In general, this Court has found testimonial statements that are inadmissible unless the defendant has been afforded the opportunity to cross-examine the declarant are those "made by witnesses to government officers investigating a crime." *Lindsey v. State*, 282 Ga. 447, 452 (4) (651 SE2d 66) (2007). See also *Jackson v. State*, 291 Ga. 22, 24 (2) (727 SE2d 106) (2012). Bulloch has cited no cases, and we have found none, in which a court has found a statement made to an acquaintance identifying an individual as one who should be suspected of a future crime against the declarant to be "testimonial" for purposes of a *Crawford* analysis.

[4] Effective January 1, 2013, this Code section has been replaced by OCGA § 24-8-807. Ga. L. 2011, p. 99, § 2.

[5] The 2005 amendment to OCGA § 17-8-71 establishing the right of the prosecutor to open and conclude the argument to the jury applies to all trials commenced on or after July 1, 2005. Ga. L. 2005, p. 20, § 17.

conclude that those deficiencies would not in reasonable probability have changed the outcome of [the trial]." *Barrett v. State*, 292 Ga. 160, 189 (733 SE2d 304) (2012).

3. Bulloch asserts the trial court committed reversible error in admitting hearsay testimony of the victim's wife and brother regarding statements the victim made to them prior to the night in question about being in a fight with Bulloch.

(a) The victim's wife, Carrie Laura McKeen, testified on redirect examination that, on the Friday night before the Tuesday night on which the victim suffered his fatal injuries, he came home with a torn shirt looking like he had been in a scuffle. She became angry with him and demanded to know what had happened. The victim told her he had been in a fight with Bulloch. This testimony was admitted over trial counsel's objection on the ground of hearsay and his assertion that the State was required to establish indicia of reliability before the statements of the unavailable declarant could be presented into evidence. Counsel for co-defendant Phillips also objected on the ground that the question was not within the proper scope of redirect examination. The trial court overruled the objections because the State represented it would present other evidence to corroborate the statement and also because, according to the trial court, the wife was not testifying to the truthfulness of the victim's statement, but only to what he stated to her. With respect to corroborating evidence, Kamala Liming, Bulloch's niece, later testified that on the Friday night before the victim was killed, she had been at The Pub with Bulloch and upon leaving she drove Bulloch and his then girlfriend to a house where the two of them went inside while she remained in the car. Liming testified that at some point two people came out fighting. Her testimony implied, without expressly stating, that Bulloch was one of the fighters but she testified it was dark and she could not identify the other fighter as the victim. Without objection, however, the officer who interviewed Liming on December 14, 2003, testified Liming told him that on the night in question she saw Bulloch beat "to a pulp" a boy who was later identified to her as Paul McKeen, Jr., as Bulloch demanded money on a drug debt. Reading from the report of the statement he took from Liming, the officer testified Liming related to him that Bulloch told the boy "if he didn't pay him, the next time he saw him he'd beat him to death."

We agree that the wife's testimony about her deceased husband's statement is hearsay and is not admissible pursuant to former OCGA § 24-3-2[6] as original evidence. This testimony did not involve

---

[6] This Code section was repealed effective January 1, 2013 by Ga. L. 2011, p. 99, § 2.

a communication with respect to which "the fact that such communication was made, and not its truth or falsity, is the point in controversy." See *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982). Consequently, the trial court erred in ruling the statement was admissible on the ground that the wife's testimony was not presented for the purpose of establishing the truthfulness of the victim's statement. The truthfulness of the victim's statement is the only reason it is relevant and was presented, presumably, as evidence the State believed would demonstrate Bulloch's motive, intent, and bent of mind in committing the crime for which he was tried. By the same token, the wife's conduct upon hearing the victim's out-of-court statement was not an issue in the trial. See *Teague v. State*, 252 Ga. 534 (1) (314 SE2d 910) (1984).

The question then becomes whether the statement was admissible pursuant to the necessity exception of former OCGA § 24-3-1 (b).[7] Bulloch asserts that even if the necessity requirement to establish an exception to hearsay is satisfied in this case, insufficient evidence was presented to establish the "particularized guarantees of trustworthiness" required by this Court in *Watson v. State*, 278 Ga. 763 (2) (a) (604 SE2d 804) (2004). As noted in *Watson*, "this Court has consistently held that hearsay testimony by close, personal friends of the unavailable declarant is admissible under the necessity exception." Id. at 765. Bulloch asserts that the spousal relationship between the victim and the witness in this case does not, alone, establish sufficient indicia of reliability and he shows that no evidence was presented regarding the quality of the marriage or whether the victim confided in his wife or was truthful with her. Bulloch asserts that this Court has found sufficient indicia of reliability based on a familial relationship between the witness and the out-of-court declarant only where there was evidence of a confidential relationship between the parties. See *Mills v. State*, 287 Ga. 828 (3) (700 SE2d 544) (2010) (reliability to support the admission of testimony regarding a sister's out-of-court statements was established by evidence of the closeness of the relationship); *Allen v. State*, 284 Ga. 310 (2) (667 SE2d 54) (2008) (evidence established a close confidential relationship between the sister who testified and the sister who made the out-of-court declaration). Compare *McWilliams v. State*, 271 Ga. 655 (2) (521 SE2d 824) (1999) (reversing a conviction where a sister's testimony about

---

[7] Effective January 1, 2013, this Code section has been replaced by OCGA § 24-8-807. Ga. L. 2011, p. 99, § 2.

out-of-court statements made by the victim were improperly admitted because no evidence was presented that the sisters had a confidential relationship). We note that in *Belmar v. State*, 279 Ga. 795 (2) (621 SE2d 441) (2005), this Court concluded that the testimony of a mother regarding her son's out-of-court statement did not meet the requirement of particularized guarantees of trustworthiness simply because of the mother-son relationship where no evidence was presented about the son's truthfulness to his mother or the state of their relationship. Nevertheless, we are not prepared to hold that the spousal relationship in this case was insufficient to establish the required indicia of reliability to admit the wife's testimony. The evidence showed the witness and the victim lived together with their two-year-old son and that she was concerned about her husband's activities and met him at The Pub on the night he was killed. Bulloch's counsel was permitted to recross-examine the witness to challenge the reliability of the victim's out-of-court statement during which examination he presented the wife's testimony that on the night of the crime she observed her husband playing pool with Bulloch and they were not arguing. See *Devega v. State*, 286 Ga. 448 (3) (689 SE2d 293) (2010); *Allen*, supra, 284 Ga. at 314.

Moreover, even if it were error to have admitted the wife's testimony concerning the victim's out-of-court statement about a previous fight with Bulloch over a drug debt, we find it is highly probable that the error did not contribute to the judgment, pursuant to the test set forth for such errors in *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). Here, the wife's testimony was merely cumulative of other evidence presented concerning the previous fight. See *Teague*, supra, 252 Ga. 537. As there was otherwise sufficient evidence to prove Bulloch's guilt beyond a reasonable doubt, "[u]nder the totality of the circumstances, the trial court did not abuse its discretion in permitting the testimony." *Allen*, supra, 284 Ga. at 314 (2).

(b) The victim's brother, who was 16 years old at the time his brother died at age 20, testified that on either Saturday or Sunday before the victim was killed the victim came to the store where he worked, looking disheveled and acting nervous. He asked if he could borrow twenty dollars to buy .30 caliber carbine shells for a gun the victim occasionally borrowed from their grandfather. When asked what was wrong, the victim answered he had had an altercation with someone the previous week and needed ammunition for that gun. The brother testified: "[H]e said 'If anything out of the ordinary happens, Charles Bulloch's who did it. . . . [W]rite that name down.'" When the brother wrote the name on a piece of paper, the victim looked at it and said: "'Yes, Charles. Anything happens to me, give that to daddy.'" In fact, the note with Bulloch's name on it was given to the sheriff's

department before the victim died, and the witness identified it at trial. Bulloch's counsel raised no objection to this testimony but proceeded to cross-examine the brother about the victim's out-of-court statement.[8] Consequently, Bulloch's objection to the admission of this testimony on the ground that it violates his Sixth Amendment right to confront a witness because this out-of-court statement is a "testimonial statement," as that term was used in *Crawford v. Washington*, was waived. See *Adams v. State*, 288 Ga. 695 (5) (707 SE2d 359) (2011); see also *Melendez-Diaz v. Massachusetts*, 557 U. S. 305, 314, n. 3 (129 SCt 2527, 174 LE2d 314) (2009).

4. As his final enumeration of error, Bulloch asserts the trial court improperly instructed the jury on the issue of venue, resulting in reversible error.[9] The victim was found barely alive as a result of head injuries alongside a road in Meriwether County. Sufficient evidence was submitted to support the conclusion that the cause of the victim's death was a beating involving blows to the head. While no direct evidence was presented establishing where the beating was committed, sufficient indirect or circumstantial evidence was presented from which the jury could conclude the victim was beaten at the pull-off on the road on Pine Mountain in Harris County.

Venue is a jurisdictional element of every crime, and the State has the burden of proving venue beyond a reasonable doubt. *Bradley v. State*, 272 Ga. 740 (2) (533 SE2d 727) (2000). Included in its charge on venue, the court correctly instructed the jury that "criminal actions shall be tried in the county in which they were committed"; that venue is a jurisdictional fact that "must be proved beyond a reasonable doubt"; and that it may be proved by direct or circumstantial evidence. Bulloch asserts several errors arising out of the charge on venue, however, including the fact that the court charged: "[I]f you find beyond a reasonable doubt that a conspiracy existed, venue may lie here if any conspirator committed any overt act here in furtherance of the conspiracy." The State acknowledges this charge was improperly requested by the State and that it was erroneously given to the jury since Bulloch was not charged with conspiracy but with the actual commission of the crimes charged. See *Tesler v. State*, 295 Ga.

---

[8] The State filed a pre-trial Motion in Limine seeking the trial court's prior approval to admit the testimony of the wife and brother regarding the victim's out-of-court statements, and Bulloch filed a Motion in Limine seeking to exclude the out-of-court statements of any person not testifying at trial. The court reserved ruling on these motions and instructed the parties to raise whatever hearsay objections they may have at the time the State sought to present it.

[9] This case was tried before the July 1, 2007 effective date of OCGA § 17-8-58, and Bulloch preserved this issue for appeal by reserving his objections to the jury instructions. See *Lewis v. State*, 291 Ga. 273, 278, n. 5 (731 SE2d 51) (2012).

App. 569 (1) (672 SE2d 522) (2009). Accordingly, the State was required to establish beyond a reasonable doubt that the crimes charged were committed in Harris County. "However, an erroneous charge does not warrant a reversal unless it was harmful and, in determining harm, the entirety of the jury instructions must be considered." *Foote v. State*, 265 Ga. 58, 59 (2) (455 SE2d 579) (1995).

In this case, the charge correctly instructed the jury that venue would be established if they found beyond a reasonable doubt that the murder was committed in Harris County; that the cause of death was inflicted in Harris County; or (as set forth in OCGA § 17-2-2 (h)), if it could not be determined in what county the crime was committed, "it may be considered to have been committed in [Harris County]" if they found beyond a reasonable doubt that it might have been committed in Harris County.[10] The evidence was sufficient for the jury to find beyond a reasonable doubt that venue was established in Harris County under any of these theories of venue. Moreover, the trial court properly instructed the jury "that each element of a crime must be proved beyond a reasonable doubt; that venue is an element of any crime; that the State has the burden of proof on each element; and that such a burden never shifts to the defendant." *Edmond v. State*, 283 Ga. 507, 509 (4) (661 SE2d 520) (2008) (reversible error not found where the charge as a whole was not misleading or confusing). Under the circumstances present in this case, we find it highly probable that giving the erroneous instruction did not contribute to the verdict and was harmless. See *Hunter v. State*, 281 Ga. 693 (5) (642 SE2d 668) (2007) (any error in the court's charge was harmless when the instructions were considered in their entirety); see also *Lewis v. State*, 291 Ga. 273 (4) (731 SE2d 51) (2012) (improper charge on the reliability of witness identification of a perpetrator was harmless and not reversible error where the evidence showed identification of eyewitnesses did not play a significant role in the State's evidence). We have considered Bulloch's remaining assertions that the charge was erroneous and find them to have no merit.[11]

---

[10] We find no reversible error in the fact that the charge as given instructed the jury that the crime "may be considered" to have been committed in Harris County when the language of OCGA § 17-2-2 (h) reads "shall be considered." A mere slip of the tongue in what was clearly an attempt to give a proper charge and which could not have misled the jury does not require reversal. *Render v. State*, 288 Ga. 420, 424 (2) (b) (704 SE2d 767) (2011).

[11] Specifically, we have considered and rejected the following assertions of error: that the instruction that "[v]enue *may* be proved by direct or circumstantial evidence or both," (emphasis supplied) instead of the phrase "must be proved," as set forth in Pattern Jury Instruction No. 1.51.10, created reversible error by diminishing the State's burden of proof because, when considered as a whole, the instruction on the State's burden of proof was not misleading or confusing; that the transcript reflects the judge improperly declared venue lies

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 17, 2013.

*Howard J. Weintraub, Benjamin B. Alper*, for appellant.
*Peter J. Skandalakis, District Attorney, Raymond C. Mayer, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.

---

in Harris County as to the murder charge because we conclude that a reading of the transcript supports the conclusion that the transcript contains an obvious scrivener's error in the placement of a period so that, when read without the insertion of the extraneous period, the court properly instructed the jury that venue lies in Harris County "[i]f you find beyond a reasonable doubt that the murder was committed here . . . ;" and that the trial court erred in giving an instruction on venue for a crime committed while in transit between counties, as authorized by OCGA § 17-2-2 (e), because sufficient circumstantial evidence was presented from which a jury could conclude the crime was committed while in transit between Harris and Meriwether Counties.